## WILLIAM L. COWELL *v.* STATE OF INDIANA.

[No. 1173S227.  Filed July 15, 1975.]

*J. Michael Katz,* of Merrillville, for appellant.

*Theodore L. Sendak,* Attorney General, *John E. Meyer,* Deputy Attorney General, for appellee.

ARTERBURN, J.—A jury convicted Defendant of First Degree Murder.  He appeals.  On the night of August 23, 1972, Defendant drove to the home of William Siebert, Jr. and shot that man twice in the head with .38 caliber bullets the tips of which had been cut off by Defendant in order to cause them "to penetrate or something."  Defendant was apprehended on September 1, 1972.

Defendant admitted the killing to two people who so testified at trial.  He confessed to the Lake County Police.  A signed written confession and a signed waiver of *Miranda* rights were admitted into evidence.

Defendant's first allegation is that State's Exhibits 2 through 10, which are photographs of the dead man at the scene of the killing, were admitted into evidence although

their only function was to inflame and prejudice the jury. All of these photographs were corrobative of oral testimony. It is well-settled that such pictures are admissible notwithstanding elements of repetition and unpleasantness. *Hubbard* v. *State,* (1974) 262 Ind. 176, 313 N.E.2d 346; *Leaver* v. *State,* (1968) 250 Ind. 523, 237 N.E.2d 368; *Kiefer* v. *State,* (1958) 239 Ind. 103, 153 N.E.2d 899. As it has been said:

> "Murder by its very nature, is a gruesome 'business.' One who takes the life of another human being cannot, with propriety, object to the full exposure of the wounds which he inflicted upon the body of his victim, merely because such evidence may tend to inflame the jury." *Marshall* v. *State,* (1962) 242 Ind. 606, 610, 180 N.E.2d 233, 235 (concurring opinion).

Defendant postulates the denial of a request for a continuance as a ground for a new trial. Defendant was arrested September 1, 1972; on November 22, 1972, the trial court, after examining written reports of two psychiatrists, found that Defendant did not have sufficient mental competency to stand trial. On January 13, 1973, Defendant was found by the trial court to have such competency. Trial was eventually set for April 23, 1973. Two physicians were appointed by the court to examine the Defendant who had pleaded not guilty by reason of insanity. Ind. Code § 35-5-2-1 *et seq.,* Burns § 9-1701 *et seq.* (1974 Supp.). On April 16, 1973, seven days prior to trial and nearly six months after arrest, Defendant filed the following motion for a two weeks' continuance for the purposes of securing a mental examination of the defendant by a specified doctor and thereupon obtaining the testimony of this doctor at trial:

## "AFFIDAVIT FOR CONTINUANCE

DONALD P. LEVINSON, being first duly sworn and upon his oath, deposes and says:

1. That this cause has been duly scheduled for trial by jury on the 23rd day of April, 1973.

2. That an agreement was entered into between Terrance Smith, Deputy Prosecuting Attorney for the State of Indiana, and Max Cohen, Attorney for the defendant, that

said trial would go forth on the abovementioned date and that upon receipt of statements of all witnesses for the State, counsel for the defendant would forego any further discovery herein.

3. Affiant herein is informed and verily believes that said agreement was contingent upon the fact that each side would be able to have its witnesses present on the above date; however, counsel for defendant has recently discovered that it will be unable to present one of its witnesses, namely, Myron E. Berkson, M.D.

4. That the defendant herein has filed a special plea of insanity and anticipated the use of Myron E. Berkson, M.D., who is a psychiatrist practicing psychiatric medicine in Michigan City, Indiana; counsel for the defendant has recently discovered that said Dr. Berkson has been out of the jurisdiction of the Court since April 2, 1973, and will remain outside of the jurisdiction until April 19, 1973, and it has, therefore, become impossible to have Dr. Berkson examine the defendant herein for any psychiatric disorder prior to trial.

5. That a two week delay and continuance in this cause should be sufficient to secure an examination of the defendant herein; and no further delays are anticipated barring unforeseen catastrophe.

WHEREFORE, defendant, by counsel, respectfully requests a continuance of two (2) weeks herein in order to secure examination and testimony of Dr. Myron E. Berkson and for all relief otherwise just and proper in the premises."

Continuances for the purposes indicated by the above motion are regulated by Ind. Code § 35-1-26-1, Burns § 9-1401 (1956 Repl.) which says, in pertinent part, that:

"A motion by the defendant to postpone the trial on account of the absence of evidence can be made only on affidavit showing materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be; and if the postponement be asked on account of an absent witness, the affidavit must show the name and residence of the witness, if known, and the probability of procuring his testimony within a reasonable time. The affidavit must further show that the absence of such witness has not been procured by the act or connivance of the defendant, nor by others at his request, nor with his knowledge and consent, and what facts he believes the witness will testify to, and that he believes

them to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured."

It can readily be discerned that the motion failed in numerous ways to meet the requirements of the statute. (1) There is no statement of what evidence is expected to be obtained. If it is said that implicit in the motion is the idea that the evidence to be obtained is testimony that Defendant was insane at the time of the crime, then there is a failure to allege due diligence in attempting to discover such evidence. (2) There is no affidavit that the absence of the witness had not been procured by the defendant. (3) There is no affidavit that the defendant believes that what the witness would testify to is in fact true. (4) There is no affidavit that no other witness could testify as would the missing witness. For all of these deficiencies the trial court correctly denied the motion for continuance. It is to be noted that the defendant was examined by two physicians in regard to his plea of not guilty by reason of insanity. Further, Defendant had nearly six months to secure the examination by the doctor of his choice. As we said, if this doctor was to give unique evidence the statute requires that such be alleged and that due diligence in procuring this unique evidence be shown.

Defendant's third suggestion of error is that his written confession to the Lake County Police, Exhibit 17, was not voluntary and therefore should have been suppressed. The trial court denied such a motion. The trial judge heard Defendant testify that he was never given the *Miranda* warnings, that his requests for an attorney were refused, that he was knocked down and shoved, and that he was denied treatment for an injured foot until he confessed. The trial judge heard three police officers testify that Appellant was given his *Miranda* warnings three (3) times before signing the waiver and confession. These officers testified Defendant did not request an attorney and that his foot was treated prior to the time of the written confession. It is the

trial judge who weighs conflicting evidence. On appeal we do not disturb a trial court's ruling as to the admissibility of a confession based on conflicting evidence except for an abuse of discretion. *Rogers* v. *State*, (1974) 262 Ind. 315, 315 N.E.2d 707; *Cooper* v. *State*, (1974) 261 Ind. 659, 309 N.E.2d 807; *Lewis* v. *State*, (1972) 259 Ind. 431, 288 N.E.2d 138. It was not an abuse of discretion for the trial court to conclude that the confession was voluntary.

Defendant's final contention is that his tendered Instruction No. 6 should have been given by the trial court. The tendered instruction was the following:

> "If you find from the evidence that at the time the alleged crime was committed, the defendant had substantially reduced mental capacity, whether caused by mental illness, mental defect, or any other cause, you must consider what effect, if any, this diminished capacity had on the defendant's ability to form any of the specific mental states that are essential elements of murder and voluntary manslaughter.
>
> Thus, if you find that the defendant's mental capacity was diminished to the extent that you have a reasonable doubt whether he did, maturely and meaningfully, premeditate, deliberate, and reflect upon the gravity of his contemplated act, or from [sic] an intent to kill, you cannot find him guilty of a willful, deliberate and premeditated murder of the first degree.
>
> Also, if you find that his mental capacity was diminished to the extent that you have a reasonable doubt whether he did harbor malice aforethought, you cannot find him guilty of murder of either the first or second degree.
>
> Further, if you find that his mental capacity was diminished to the extent that he neither harbored malice aforethought nor had an intent to kill at the time the alleged crime was committed, you cannot find him guilty of either murder or voluntary manslaughter."

Defendant's tendered instruction embodies the concept of "diminished capacity" which is in use in several states. *See* 22 ALR 3d 1228 (1968). This term is synonymous with the idea of insanity as a condition of varying degrees. In Indiana we do not recognize

degrees of insanity. *Hashfield* v. *State,* (1965) 247 Ind. 95, 210 N.E.2d 429; *Warner* v. *State,* (1887) 114 Ind. 137, 16 N.E. 189. In *Hashfield, supra,* we rejected a tendered instruction "that actual insanity, however partial it may be, is, in Indiana, a defense," and said that:

> ". . . mere mental disease, mental defect, or weakness of intellect, which, to a layman, might be described as 'partial insanity', will not provide the defense of insanity in this state because *any* of these characteristics might be present—and still not constitute *legal* insanity." *Hashfield, supra,* 210 N.E.2d at 434.

Although the definition of insanity effective at the time *Hashfield* was decided has since been modified to take into account both the cognitive and volitive facets of an individual's behavior, *Hill* v. *State,* (1969) 252 Ind. 601, 251 N.E.2d 429; nevertheless, *Hill* did not alter the principle for which *Hashfield* stands: within the ambit of the terms comprising the definition of legal insanity "complete mental incapacity [must be demonstrated] before criminal responsibility can be relieved." *Hill, supra,* 252 Ind. at 608.

The Court's Instructions Nos. 1 and 2 contained a correct statement of the law pertaining to the defense of not guilty by reason of insanity. Furthermore, in Instructions Nos. 11 and 12 the Court instructed the jury that there may not be a conviction for first degree murder without proof beyond a reasonable doubt of the mental elements of intent, malice and premeditation. This was the essence of Defendant's tendered Instruction No. 6. It is not error to refuse an instruction the substance of which is covered by other instructions. *Martin* v. *State,* (1973) 260 Ind. 490, 296 N.E.2d 793; *Sargeant* v. *State,* (1970) 255 Ind. 252, 263 N.E.2d 525.

Finding no error, we affirm.

All Justices concur.

NOTE.—Reported at 331 N.E.2d 21.